CAMPBELL, M., Associate Judge.
The subject matter of this appeal began below as two separate actions that were subsequently consolidated by order of the trial court. The first action sought specific performance by appellant Bilic against ap-pellees Frank and Martha Zamboni, individually and as trustees, and appellee Wick-ham Road Estates, Second Addition, Inc. (Wickham). The subject matter of that specific performance action was a purported contract to convey real property by the appellees Zamboni as sellers to appellant Bilic as buyer. Appellee Wickham was the subsequent purchaser of the property from the Zambonis.
The second action below was brought by cross-appellant Aladdin Real Estate, Inc. (Aladdin) seeking a real estate broker’s commission as the procuring broker in regard to the purported contract between appellant Bilic and appellees Zamboni. The trial judge found that no mutually binding contract was ever achieved by appellant Bilic and appellees Zamboni and therefore denied the relief sought by appellant Bilic and appellant Aladdin. We reverse on the very narrow issue of the existence of a contract, finding that a contract did in fact exist.
The facts show that appellees Zamboni owned a 34.5 acre parcel of land in Brevard County which they listed for sale with cross-appellant Aladdin. After several offers and counteroffers a written contract was prepared, signed by appellee Frank Zamboni and dated March 12, 1981. Bruce Miley, the real estate agent for Aladdin took the signed contract to appellant Bilic for his signature and acceptance. Appellant Bilic signed the contract but added and initialed a handwritten alteration to a special clause of the contract.
That special clause intially provided “Contract contingent upon seller getting property rezoned to a 146 unit mobile home park per plans.” Appellant Bilic’s alteration caused that clause to provide “Contract contingent upon seller getting property rezoned to a mobile home park, and that water and sewer can be connected to it.” In all other respects the contract as it was signed by appellees Zamboni remained unchanged. Appellee Zamboni testified he never saw the altered contract and that he did not know he had a contract because he thought it was contingent on getting the land rezoned. Bruce Miley’s testimony contradicted that of appellee Zamboni in that Miley testified that Zamboni not only received a copy of the contract but also expressly agreed over the telephone to the altered provisions. The trial court obviously accepted appellee Zamboni’s version of the events to that point in time and so we must also. However, subsequent events cause us to find that the trial court erred in finding a contract never existed.
The contract provided that closing would be on May 29, 1981, unless extended. On May 4, 1981, appellant Bilic and appellee Zamboni executed an “Addendum to Contract” which was witnessed by Bruce Mi-ley. That addendum provided “It is expressly understood that should this property not be rezoned by May 29, 1981 this contract will be extended, at the option of the buyer, for the time required to get the property rezoned.” On June 5,1981, appel-lee Zamboni entered into a subsequent contract for the sale of the property to appel-lee Wickham. That contract provided for a higher net return to the appellees Zamboni and was conditioned upon the Bilic contract not being completed. The Wickham contact closed on September 10, 1981.
Subsequently, the Zambonis and Wick-ham entered into a hold harmless agreement indemnifying the Zambonis for any liability for failure to close the Bilic contract. Previously, on August 10, 1981, the Zambonis’ attorney wrote to Bilic in care of Aladdin Realty notifying Bilic that the rezoning had been refused. That letter also scheduled a closing for August 20, 1981, if Bilic desired to close “with the zoning as is.” The letter concluded that a failure to close on August 20, 1981 would result in Zamboni considering “the contract null and void.” Appellant Bilic’s attorney replied by letter dated August 18, 1981 that appellant Bilic was in Canada, desired to close on the *172 property “as is” and was prepared to do so on September 21, 1981. He further wrote that the August 20, 1981 closing date was unreasonable in that it provided insufficient time to close. As a result of the subsequent closing and sale to Wickham the separate actions below were initiated.
As we previously stated the trial court’s judgment was based on the finding that
[T]he respective offers to sell the property by Defendants Zamboni to Plaintiff Bilic were never accepted by the Plaintiff under the terms of the offer therefore no contract to sell and buy the subject property between the Plaintiff and Defendants Zamboni ever arose.
However, we must and do conclude that when the addendum to the contract was executed by both parties on May 4, 1981 appellee Zamboni knew or should have known the terms of the contract and by the execution of the addendum accepted them so as to effectuate the contract.
The trial court did not address the reasonableness of the ten day limitation on closing set forth in the August 10, 1981 letter to appellant Bilic. Neither did the trial court address or interpret the provision in the May 4, 1981 addendum that the “contract will be extended at the option of the buyer.” We likewise do not address either of those issues but reverse and remand for further treatment consistent with our holding that a contract between Bilic and the Zambonis did exist on May 4, 1981.
REVERSED AND REMANDED.
DAUKSCH and COWART, JJ., concur.